## STEVENS v. CENTRAL LIFE ASSUR. SOC. (MUTUAL).

### No. 6497.

Circuit Court of Appeals, Seventh Circuit.

Jan. 13, 1939.

Ralph F. Potter, of Chicago, Ill., Fred P. Carr and A. R. Shepherd, both of Des Moines, Iowa, and Robert B. Johnstone, of Chicago, Ill., for appellant.

Timothy I. McKnight, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

This is an appeal from a judgment of the District Court rendered in a suit upon a policy of life insurance. The judgment was in favor of the plaintiff for the full amount of the face of the policy with interest to the date of trial.

The policy in question was issued by the now defunct Illinois Life Insurance Company, and is of the type known as ordinary life. On July 4, 1933, the policy became one of extended term insurance by reason of failure of insured to pay the then due premium. During the period within which premiums were paid timely a receiver was appointed for the Illinois Life Insurance Company on November 28, 1932. The District Court in which the receivership was pending determined that it would be to the best interest of the policyholders that the business of the Illinois Life Insurance Company be continued under a plan of reinsurance by another insurance company. Various proposals for reinsurance were received and the defendant company was selected as the reinsurer. The assets and business of the Illinois Life were turned over to the defendant in accordance with the terms of a reinsurance contract and the decree of the District Court.

Pursuant to an "assumption certificate" and the reinsurance contract, the defendant assumed the liability of the Illinois Life Insurance Company under the original policies, subject to the terms and conditions set forth in the reinsurance contract. It is undisputed that by the terms of the original policy in suit the extended insurance would have been for the face of the policy and for a term of five years and nine months from the date of lapse, if the Illinois Life Insurance Company had been a solvent going company on that date; and that the extended period would have continued until April 4, 1939, a date subsequent to the death of the insured on May 14, 1936. But the defendant contends that under the provisions of the original policy contract as modified by the reinsurance contract, the amount of the extended insurance was reduced and the term of extension so shortened that the policy was not in force at the date of the insured's death.

When the District Court appointed a receiver for the Illinois Life Insurance Company the total amount of outstanding

insurance was $140,000,000. If the assets had not become impaired, the reserves available for the payment of death losses or other liabilities under insurance contracts would have been $24,281,462.43. The appraised value of the assets was $4,240,000. This terrific depletion of assets made it impossible for the reinsurer to assume the full liabilities of the Illinois Life Insurance Company. Policyholders were given an option to continue their insurance or to file claims for the cash value of their insurance contracts which would have availed them approximately 15% of their claims; and to compensate for the depreciation of assets it was necessary to restrict the reinsurer's liability under the original policy contracts of those who elected to continue as policyholders.

To effect a general limitation of liability under original policies the contract of reinsurance charged against each policy what is denominated a policy lien, and which is described as "an obligation similar to a policy loan." To determine the amount of the lien the contract provided for a "lien percentage" which was fixed initially at 70% of the net equity. The "net equity" is defined as "the reserve and additions less any policy indebtedness." The contract also provided for adjustment of the initial lien percentage of 70% in case the original valuation of the assets should prove to have been too low. Each policy reinsured and assumed by the contract of reinsurance was made subject to the lien, except as otherwise provided in the contract. Also, the policy lien bore interest from November 28, 1932, at 4½% per annum. Paragraph 10 of the contract recognizes the impracticability of applying the lien directly to some policies, and states that

liability with respect thereto "is herein modified."

The net effect of the policy lien and interest provisions is to impose upon each policy which is assumed and reinsured by the defendant a debt obligation for a sum equal to the amount of the policy lien plus unpaid interest.[1] The only policies excepted are those which are relieved from the policy lien by the terms of the reinsurance contract. The policy lien is "similar to a policy loan" and is subject to interest, the same as an ordinary policy loan. It may be discharged by payment. A policy loan, or policy indebtedness, under the provisions of the original policy in suit, is used for two purposes: (1) When a claim matures upon a policy the amount of any policy indebtedness becomes "a first lien" on the policy and is "deducted from any amount becoming due" thereon. (2) Any policy indebtedness is subtracted from the policy values which are set out in the table of values and the remainder is used to purchase benefits which are authorized by the policy, the benefits being reduced by reason of the loss in policy value.

The foregoing provisions are material to our present inquiry, since, if applicable, they control, unless modified by the reinsurance contract.

Plaintiff-appellee contends that paragraph 15 of the reinsurance contract disposes of any question of policy lien, or policy indebtedness based thereon, for purposes of the present case. By paragraph 15 the reinsurer agrees to "either waive or reinsure the policy lien" and not to "deduct the lien from claims arising out of death occurring prior to December 31, 1938."[2] The claim in suit arises out of death occurring

---

[1] "There being a present impairment of the reserves of the Illinois Life, it is necessary to place a lien against each policy reinsured hereunder. Inasmuch as it is impracticable to apply the lien directly to some policies, the liability with respect thereto is herein modified. As to those policies to which the lien is affixed, there is created and hereby established and fixed an obligation similar to a policy loan in addition to any existing policy indebtedness." (Paragraph 10 of reinsurance contract.)

"So long as any lien against any policy shall remain in effect, it shall bear interest computed from November 28, 1932, at the rate of four and one-half per cent (4½%) per annum. Such interest shall be computed to the next succeeding anniversary date of each policy, and thereafter annually, and shall become due and payable on such dates. Interest on the policy lien, if not paid when due, shall become a policy indebtedness and shall be subject to the terms of the policy as to a policy loan." (Paragraph 13 of reinsurance contract.)

[2] "The Company will either waive or reinsure the policy lien and will not deduct the lien from claims arising out of death occurring on and prior to December 31, 1938. As to claims for death thereafter occurring the whole or any part of such lien shall either be waived or reinsured during any year, to the extent that at the end of the preceding year the unappropriated accumulated net earnings upon the business of the Illinois Life

prior to December 31, 1938, and it is plaintiff's view that the waiver of deduction of the policy lien applies to such claim and that the waiver of deduction of the lien has the effect of destroying the lien for any purpose.

██ As already pointed out the policy involved in the instant suit became a policy of extended insurance on July 4, 1933, by reason of failure to pay the premium then due. Such a result is provided for in the original policy. The original policy contains a table of policy values which values determine the length of the period of extension in case the original policy becomes one for extended insurance by reason of failure to pay premiums. Under the terms of the original policy, including the appropriate table of values, it is not necessary to compute a new amount for the face of the policy since the face of the policy is used as a fixed factor in preparing the table; also by the terms of the policy contract the original insurer was bound by the period of extension which was designated in the table. But the computations in the original contract presuppose and are based upon an estimated policy value varying with the number of premiums which have been paid prior to lapse of policy for failure to pay premiums. Further the table of values applies only to policies which are free from indebtedness.[3] In case of policy indebtedness the original policy requires that the amount of the indebtedness be subtracted from the policy value, with the result that the length of the term of extended insurance would be reduced. Since the reinsurance contract treats the amount of the policy lien as a policy loan, or policy indebtedness, it is necessary under the provisions of the original policy to subtract the amount of the policy lien from the policy value, as of July 4, 1933, in order to determine a new policy value for the purpose of applying the automatic provision for extended insurance in the instant case, unless the terms of the reinsurance contract require otherwise. By the terms of the orig-

inal policy any policy indebtedness is used in case of extended insurance for two purposes: (1) Any indebtedness must be deducted and set off against any amount becoming due on the policy of extended insurance. (2) Indebtedness must be deducted from the policy value and the resulting policy value used to determine the length of the period of extended insurance.

██ In the light of the foregoing provisions of the original policy it is clear that the waiver of the policy lien, by the provisions of paragraph 15, affects the use of policy indebtedness only for the purpose of reducing the amount due under the policy. The waiver constitutes an agreement that the amount of the lien will not be deducted from the amount of the claim under the policy. It is not an agreement that policy indebtedness, including the amount of the policy lien, shall not be deducted from the policy value. In short, assuming that the waiver provision of paragraph 15 applies to the claim in suit, the defendant company is bound not to deduct the amount of the policy lien from whatever amount may be due according to the terms of the policy. But no term of paragraph 15 can be construed to fix a new policy amount or to modify the terms of the original policy in respect to the length of the term of extended insurance. No term of paragraph 15 purports to extinguish policy indebtedness, including the amount of the policy lien.

It follows from the foregoing, if we consider only paragraph 15 in connection with the terms of the original policy which govern extended insurance, that the policy in suit became a policy of extended insurance as of July 4, 1933, in the amount of the original face of the policy of $32,500 and for such extended period as the policy value less any policy indebtedness, including the amount of the policy lien, would purchase. And, under the waiver provisions of paragraph 15, the amount of the policy lien would not be deducted from the face of the policy.

---

are sufficient for such purpose. An exception to the foregoing provisions is made in paragraph 30 applicable to the policies therein described. The cost of any such waiver or reinsurance shall be charged as an expense of the business reinsured." (Paragraph 15 of reinsurance contract.)

3 "(4) The Tables of Values on the fourth page hereof apply only to policies free from indebtedness. On policies sub-

ject to indebtedness the benefits shown in said Tables of Values shall be reduced in the following manner: Any indebtedness, including any loan made on the security of this policy, shall first be deducted from the net reserve value of the benefit applied for (if application is duly made), or of the Automatic Extended Insurance (if application be not duly made), the respective benefits indicated by said Tables being proportionately reduced."

Defendant contends that the waiver provision of paragraph 15 is applicable only to death claims under premium paying policies and, therefore, not material to the instant suit which is on a claim under a policy which, because of non-payment of premiums, had lapsed and ceased to be a premium paying policy on July 4, 1933; and had become a policy of extended insurance as of that date. But we are of the opinion that the waiver provision applies to all death claims occurring prior to January 1, 1939, regardless of the type of policy under which such a death claim is asserted. It is true that the language of paragraph 5 limits the waiver of deduction of the policy lien to claims arising under premium paying policies and between the effective date of the reinsurance contract and January 1, 1939.[4] But the language of paragraph 15 contains no mention of premium paying policies and expressly makes the waiver of deduction applicable to claims for death occurring prior to January 1, 1939, and regardless of whether the death occurred between the effective date of the reinsurance contract and January 1, 1939, or prior to the effective date of the reinsurance contract. The limitations on the use of the waiver of deduction are fixed by the language "from claims arising out of death occurring on and prior to December 31, 1938," and not by type or character of policy.

Defendant further insists that, apart from the force of paragraphs 5 and 15, paragraph 33 fixes a new policy amount and that paragraph 34 creates a new and shorter term for the extended insurance.

To appraise the foregoing contention of defendant it is necessary to consider the provisions of certain paragraphs of the contract of reinsurance beginning with paragraph 29. These paragraphs deal with classes, or types of policies, "as affected by lien percentage." Preceding paragraph 29 is the heading "Classification of Policies as Affected by Lien Percentage. Policies Subject to the Lien." Paragraph 29 declares that "Every policy reinsured and as-sumed" in the reinsurance contract, except as therein otherwise provided, "shall be subject to the lien." Paragraph 29 is followed by paragraphs which deal with special types of policies which, as stated in paragraph 29, are "policies receiving special treatment." Paragraph 30 deals with "Fully Paid Policies"; paragraphs 31 and 32 deal with "Extended and Fractionally Paid Up Insurance November 28, 1932," and paragraphs 33, 34, and 35 with extended and fractionally paid up insurance under "Policies Lapsed After November 28, 1932." The foregoing types of policies are segregated from other policies, which are reinsured and assumed under the contract, for the special treatment which is provided in paragraphs 31 to 35. The special treatment consists of modifications of the scope of the defendant's liability under the terms of the original policy and the special treatment results in the creation of new and reduced policy obligations to conform to the greatly depreciated policy values due to the insolvency of the Illinois Life Insurance Company.

Paragraphs 33 to 35 deal with policies which by reason of nonpayment of premiums *after* November 28, 1932, have become fractionally paid up or extended insurance policies by force of the provisions of the original policies. That group includes the policy in suit which became a policy of extended insurance by reason of the lapse of the original policy after November 28, 1932. The first sentence of paragraph 33[5] necessarily refers only to cases of lapsed policies which have become fractionally paid up policies under the option of the original policy. By its terms the amount of the new policy obligation is to be such as the net equity of the policy less (a) any surrender charge provided for in the policy, and (b) the policy lien, will purchase. This new policy amount is not subject to the lien.

The foregoing computation of the amount of the fractionally paid up policy uses the policy lien or, what is the same

---

[4] Paragraph 5 reads as follows: "Where death occurs after the effective date of this contract and prior to January 1, 1939, deduction will not be made on account of the policy lien, if any, against any premium paying policy, but deduction will be made for any unpaid interest upon the lien. * * *"

[5] Paragraph 33 is as follows: "Any policy which shall have lapsed after November 28, 1932, and shall not have been reinstated shall be limited to the automatic provision contained in such policy for such amount as at the time said policy lapsed the net equity of such policy less (a) any surrender charge provided for therein, and (b) the policy lien, will purchase and shall not be subject to the lien. In case of extended insurance it shall be for the face of the policy less (a) any policy indebtedness, and (b) less the policy lien."

thing, the amount of the lien percentage, as a deduction factor in determining the policy value available to purchase a new policy amount. The policy lien is not deducted from either the original amount or the new amount of the policy.

The second sentence of paragraph 33 provides that "In case of extended insurance it shall be for the face of the policy less (a) any policy indebtedness, and (b) less the policy lien."

There can be no question about the intent and meaning of the provisions of paragraph 33. They apply to policies which have lapsed since November 28, 1932, and which by force of the original policy provisions, have become policies either of fractionally paid up or of extended insurance. By sentence one a modified policy amount of fractionally paid up insurance is determined by an adjusted policy value which is obtained by subtracting the amount of the policy lien and any surrender charge from the net equity of the policy; and by sentence two the new amount of the extended insurance is determined by subtracting directly from the original face of the policy the amount of the policy lien in addition to any policy indebtedness.

Paragraph 33 deals with the phase of policy obligation which is common to both fractionally paid up and extended insurance, namely the amount of insurance; but does not provide for an adjustment of the term of extended insurance. But special provision for adjustment of the term of extension for certain policies is found in paragraph 34(2), which reads as follows: "In event of a death claim occurring on any policy which lapsed between November 28, 1932, and December 31, 1933, the lien percentage of seventy per cent (70%) shall be used to determine whether or not such policy had sufficient value to maintain it in force until the date of death." The policy in suit is one for extended insurance, and 34(2) must apply to extended insurance or else be meaningless; and the policy comes within the foregoing since the claim thereon is a death claim and the policy lapsed between November 28, 1932, and December 31, 1933. The necessary intent and obvious meaning of paragraph 34(2) is that a new policy value be fixed by subtracting from the net equity of the policy any policy obligation, including the policy lien which is to be determined by using a lien percentage of 70 per cent. This is the same method required by 33(1) to determine a new policy value for the purpose of purchasing a new policy amount of fractionally paid up insurance. Both 33(1) and 34 (2) are directed to the determination of new policy values for the purchase, in the case of the former, of amount of fractionally paid up insurance, and in the case of the latter, for the purchase of time of extended insurance.

The foregoing constructions of paragraphs 33 and 34 cannot be avoided in the light·of the provisions of the original policy relating to fractionally paid up and extended insurance.[6] Paragraphs 33 and 34 modify the original terms governing liability in respect to fractionally paid up and extended insurance on policies which have lapsed after November 28, 1932. The method of modification is to require the amount of the policy lien, and the interest thereon, to be treated as a policy indebtedness in fixing a new policy value for the purpose of computing a new amount of fractionally paid up insurance and a new term for extended insurance. Also, by 33 (2) the amount of the policy lien is deducted from the face of the original policy to determine a new face of the policy of extended insurance. In short, the original policy required an adjustment of benefits to correspond to any loss of policy value, and paragraphs 33 and 34 of the reinsurance contract accomplish the same result for policies which have suffered a special loss of value by reason of the insolvency of the original insurer.

Assuming that paragraph 33(2) requires the amount of the lien to be deducted from the face of the original policy of extended insurance, we are of the opinion that a lien percentage of 65% should be used to determine the amount of the policy lien, despite the requirement of 34(2) that 70 per cent be used as the lien percentage to determine the policy value for the purpose of computing the period of extension. Paragraph 18 directs the initial lien percentage of 70 per cent to be adjusted as soon as practicable after, and as of, December 31, 1933, and provides that "such adjustment shall finally fix the lien percentage used as the basis of adjustment of liability upon policies in any special class where so stated in this contract." The policy in question belongs to a special class of

---

[6] Supra note 3.

"policies lapsed after November 28, 1932." Paragraph 34(1) provides that "the lien percentage applicable to such policy shall be the lien percentage adjusted as of December 31, 1933, except that if the lapse shall occur after December 31, 1933, the lien percentage as theretofore last adjusted shall apply." Since the policy in suit lapsed prior to December 31, 1933, the basis of adjustment of all elements of liability would be the lien percentage adjusted as of December 31, 1933, if it were not for the requirement in the second sentence of paragraph 34 that the lien percentage of 70 per cent should be used "to determine whether or not such policy had sufficient value to maintain it in force until the date of death." Since the foregoing provision does not purport to use the 70 per cent lien percentage for adjustment of liability generally in case of policies lapsed since November 28, 1932, but limits its use to the determination of the policy value for the adjustment of the period of extension of insurance for policies lapsing between November 28, 1932, and December 31, 1933, we think that the lien percentage authorized in the more general terms of 34(1), that is the one adjusted as of December 31, 1933, should be used to determine the amount of the policy lien to be used in adjusting the amount of extended insurance by the formula provided in 33(2).

 Appellee urges that the familiar rule of construing ambiguities in language of an insurance contract against the insurer is applicable in the instant case. In case of ambiguities in language in the original policy such rule should apply, but it is not so evident that it is applicable to the language of the reinsurance contract. We do not believe that the circumstances under which the reinsurance contract was drafted and executed by the defendant and the receiver called for the application to it of the rule of construction that ambiguities of language be resolved against the insurer. However, that is an academic question in this case, since we find no ambiguities of language in any provisions material to our investigation in this appeal.

 It is clear from the contract as a whole that many paragraphs are so related to each other that they must be construed together; it is also expressly provided that the original policy controls except as modified by the reinsurance agreement. And when the related paragraphs of the reinsurance contract which apply to the policy in suit are construed together and as modifications of pertinent provisions of the original policy, we find no ambiguities of language.

There would of course be merit in the contention that certain provisions of paragraphs 33 and 34 are ambiguous if we could accept plaintiff's assumption that the waiver provisions of paragraph 15 destroy the policy lien of the policy in suit for all purposes. But the language cannot be construed reasonably to relieve policies from being subject to the lien, but only to waive part of the consequences of policy indebtedness under the terms of the original policy, that is, the consequence that upon the maturity of the policy by death of the insured all policy obligations of the insured to the company should be "deducted and set off against any amount *becoming due thereon.*" (our italics.) But paragraphs 33 and 34 utilize the amount of the policy lien to adjust the policy obligations of the insurer without reference to matured claims under the policies. And granting that the waiver provision of paragraph 15 applies to a claim asserted under the policy as modified by the terms of paragraphs 33 and 34, the effect of the waiver would be to prevent any deduction of the amount of the policy lien from the amount due under the policy as modified. But that creates no conflict between paragraph 15 and paragraphs 33 and 34 and, consequently, results in no ambiguity of language.

It follows from what we have said that when the policy in suit lapsed on July 4, 1933, the insured's policy became one for extended insurance for an amount equal to the face of the original policy less the policy lien, the policy lien to be determined by the lien percentage (65%) adjusted as of December 31, 1933, and for such period of time as could be purchased for that amount by the policy value as of July 4, 1933, the latter to be determined by deducting from the net equity of the policy 70 per cent thereof and any other policy indebtedness, the latter consisting of the interest on the policy lien.

The judgment of the District Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Judgment reversed.